**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**MICHAEL FRESH,**

                    **Plaintiff**

    **v.**                                      **1:13-cv-2657-WSD**

**DIAMOND DEVELOPMENT
INVESTMENTS, INC. d/b/a
DIAMOND DAVE'S
STEAKHOUSE, and DAVID
ULMER,**

                    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for

Insufficient Service ("Motion") [7] and Defendants' Motion to Stay Preliminary

Pretrial Deadlines and Discovery [8].

## I.    BACKGROUND

In April 2012, Defendant Diamond Development & Investments, Inc.

("Diamond") d/b/a Diamond Dave's Steakhouse ("Diamond Dave's") hired

Plaintiff Michael Fresh ("Plaintiff") as a cook.[1]  (Compl. ¶ 20).  Plaintiff asserts

---

[1]    Between April 10, 2012, and April 16, 2013, Plaintiff asserts that he worked
at Diamond Dave's approximately 60 hours per week, on Tuesday through

that Defendant David Ulmer ("Ulmer"), CEO of Diamond, "had discretion over Plaintiff's working hours and overtime compensation."  (Id. ¶¶ 14-15).[2]

On August 9, 2013, Plaintiff filed this action against Diamond and Ulmer (collectively, "Defendants") for allegedly failing to pay him overtime wages, in violation of Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Plaintiff seeks to recover unpaid wages, liquidated damages, attorney's fees, and costs.  (Id. ¶ 30).

On October 22, 2013, Plaintiff's counsel hired Elizabeth Shepherd ("Shepherd") of Triple Threat Legal Service to serve the Summons and Complaint on Ulmer.  ([9] at 2).  Shepherd filed an affidavit of service stating that she served Ulmer with a copy of the Summons and Complaint on October 29, 2013.  ([4,5]).

On November 18, 2013, Defendants filed their Motion asserting that service of process was deficient because Ulmer was not personally served.[3]  Defendants

Saturday, from 3 p.m. until 3 a.m., at a rate of $600.00 per week. (Id. ¶ 21). Plaintiff asserts that, because he allegedly worked 60 hours, 20 hours overtime, between April 10, 2012, and April 16, 2013, he should have been paid $22.50 ($15.00 x 1.5) in overtime pay for each hour he worked in excess of the 40 hour workweek.  (Id. ¶ 25).  Defendants allegedly did not pay Plaintiff any overtime wages between April 10, 2012, and April 16, 2013.  (Id. ¶ 28).

[2]      Diamond is a Georgia corporation and may be served with process by delivering a copy of the Summons and Complaint to Ulmer, its registered agent, at Ulmer's residence, which is located at 3271 Stoney Acres Drive, Kennesaw, Georgia 30152.  (Id. ¶ 7).

assert that Plaintiff left a copy of the Summons and Complaint on a porch outside of Ulmer's residence without "having made any physical, verbal, visual, or any other form of personal contact with any awake [sic] person at the residence whatsoever." (Mot. ¶ 2).

Defendants submitted four (4) affidavits in support of their Motion. In the first affidavit, Ulmer testified that he "was at his home on Tuesday, October 29, 2013, from the hours of 3:00 a.m., when [he] returned home from work, until after 6:00 p.m." (Ulmer Aff. [7 at 11-12] ¶ 7). In the second affidavit, Diane Stasney ("Stasney"), a "close personal friend" of Ulmer testified that she was also at Ulmer's residence on Tuesday, October 29, 2013, from 11:00 a.m. until after 6:00 p.m., and that "the door bell was not rung during the time [she] was visiting, no one knocked on any door and no one called out or attempted to get anyone's attention or enter [Ulmer's] home." (Stasney Aff [7 at 14-15] ¶¶ 3-7). In the third and fourth affidavits, Luann Demm ("Demm") and Clara Gail Carter ("Carter"), the assistant and general managers of Diamond Dave's, testified that Ulmer visits Diamond Dave's nearly every day and that he "is generally conspicuous and available to the public." (Demm Aff. [7 at 17] ¶¶ 4-5; Carter Aff [7 at 20] ¶¶ 4-5).

---

[3]    On November 18, 2013, Defendants also filed their Motion to Stay Preliminary Pretrial Deadlines and Discovery [8].

In the Motion, Defendants contend that "[t]he mere act of leaving some documents on an exterior porch and stealing off without making some sort of actual contact and/or communication . . . cannot form a sufficient basis on which to predicate the jurisdiction of the Court." (Id. at 8).

In response to Defendants' Motion, Plaintiff submitted an affidavit from Shepherd, Plaintiff's process server. Shepherd testified in her affidavit:

- She "visited Diamond Dave's restaurant in an attempt to serve [Ulmer] on October 22, 2013 at 6:30 p.m., October 23, 2013, at 7:15 p.m., and October 25, 2013, at 4:45 p.m." (Shepherd [9-1] Aff. ¶ 3). She also visited Kryptonite, another restaurant owned by Ulmer, "in an attempt to serve [Ulmer] on October 23, 2013, at 4:45 p.m." (Id. at ¶ 4). Ulmer's car was not at these locations when she visited.[4] "At no time did [she] see [Ulmer] or his vehicle (a black Toyota Tundra truck with license plate number DBU 111) at either restaurant." (Id. at ¶ 5).

- "At approximately 1:30 p.m. on October 29, 2013, [she] arrived at [Ulmer's] residence and [she] saw an older white male standing in the driveway speaking to man [sic] standing in the doorframe of the front door, holding the glass door open. [She] also saw a portable workbench/saw horse [sic] further down the driveway." (Id. at ¶ 7).

- She "immediately recognized [Ulmer] as the man standing in the doorframe from pictures . . . and [she] made direct eye contact with him." (Id. at ¶ 8).

---

[4] The affidavit implies that Ulmer was not present when she visited the Diamond Dave's and Kryptonite restaurants.

- She "continued down the street . . . and turned around.  As [she] re-approached [Ulmer's] house, [she] saw the man fitting [Ulmer's] description leaning into the driver's side of a black Toyota Tundra, with the license plate number DBU 111."  (Id. at ¶ 9).

- She "pulled into the driveway next door, and as [she] exited [her] vehicle, the man fitting [Ulmer's] description and [she] re-established eye contact."  (Id. at ¶ 10).  Ulmer allegedly "hurried up the front porch stairs, turned around and looked at [Shepherd] through the glass door as [she] [approached] the door . . . [h]e then closed the front wooden door as [she] was approximately 6 feet away from it."  (Id. at ¶ 11).  Shepherd "called out 'excuse me, excuse me' [to Ulmer] . . . [and] there was a big open window to [her] left of the front door and he was standing in it looking at [her]."  (Id. at ¶ 12).

- She told Ulmer that she "ha[d] service for him" and he told her he would not take it.  (Id. at ¶ 13).  At that point, Shepherd testified, she "saw what appeared to be a white female walk up beside him, to his right."  (Id. at ¶ 14).  Shepherd told the "white female" that she was a process server and that she "had Federal court papers to serve to [Ulmer]."  (Id. at ¶ 15).  Ulmer told Shepherd that he would not take them, so Shepherd told him that "either [he] [could] come out and accept the papers or [she] [could] leave them on [his] porch" but that either way, "[he] had been served."  (Id. at ¶ 16).

- Ulmer refused the Summons and Complaint, and Shepherd chose to place the papers on his front porch, and stated, "Mr. Ulmer, you have been served."  (Id. at ¶ 18).

Defendants did not submit affidavits or any additional evidence to rebut the facts set out in Shepherd's affidavit filed in response to the Motion.

## II.     DISCUSSION

### A.     <u>Motion to Dismiss for Insufficient Service of Process</u>

Rule 12(b)(4) and (5) permit dismissal for insufficient process and insufficient service of process, respectively.  Fed. R. Civ. P. 12(b)(4), (5).  Rule 4(m) states:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff– must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

According to Federal Rule of Civil Procedure 4(e), an individual may be served by following state law for service or by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2)(A-C).

"Under Fed. R. Civ. P. 4(h)(1), a corporation may be served with process by delivering a copy of the summons and complaint to an officer, managing or general agent, or the agent authorized to receive service of process."  <u>Anderson v. Osh</u>

6

Kosh B'Gosh, 255 F. App'x 345, 347 (11th Cir. 2006).

A plaintiff ultimately is responsible for timely serving process on the defendant.  Anderson, 255 F. App'x at 347 ("A plaintiff is responsible for serving the defendant with both a summons and the complaint within the time permitted under Rule 4(m).").  The Eleventh Circuit has held that "service of process that is not in 'substantial compliance' with the requirements of the Federal Rules is ineffective to confer personal jurisdiction over the defendant, even when a defendant has actual notice of the filing of the suit."  Abele v. City of Brooksville, Fla., 273 F. App'x 809, 811 (11th Cir. 2008) (citing Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries, 353 F.3d 916, 925 (11th Cir. 2003)).

Unless challenged, a return of service that is filed with the Court pursuant to the Federal Rules of Civil Procedure establishes "the *prima facie* validity and timeliness of service."  Udoinyion v. The Guardian Security, 440 F. App'x 731, 735 (11th Cir. 2011); Insituform Techs., Inc. v. AMerik Supplies, Inc., 588 F. Supp. 2d 1349, 1353 (N.D. Ga. 2008) ("As a general rule, a signed return of service constitutes prima facie evidence of valid service.").  When a defendant challenges service of process, "the serving party bears the burden of proving its validity or good cause for failure to effect timely service."  Familia De Boom v.

Arosa Mercantil, S.A., 629 F.2d 1134, 1139 (5th Cir. 1980).[5]

To challenge service of process, the party challenging service must first produce "affidavits that, in non-conclusory fashion, demonstrate the absence of jurisdiction" based on invalid service of process.  Bell v. Integrated Health Servs., Inc., Civil Action No. 06-0356-WS-M, 2007 WL 274364, at *2 (S.D. Ala. 2007).[6] "[O]bjections to service must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized."  In re Brackett, 243 B.R. 910, 915 (Bankr. N.D. Ga. 2000) (quoting People of the State of New York v. Operation Rescue Nat'l, 69 F. Supp. 2d 408, 416 (W.D.N.Y. 1999)).  Where a party submits affidavits to rebut the validity of service, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," by showing service was made.  Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

The Court may make any factual findings necessary to resolve a motion to dismiss for insufficiency of service of process "so long as the factual disputes do

---

[5]    In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit issued before the close of business on September 30, 1981.

[6]    "An unsworn written declaration may [also] be used as evidence [to challenge the validity of service] if the writer includes and signs a statement such as, 'I declare under penalty of perjury that the foregoing is true and correct.'" Udoinyion, 440 F. App'x at 735 (citing 28 U.S.C. § 1746).

not decide the merits and the parties have sufficient opportunity to develop a record." See Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008); see also Hollander v. Wolf, No. 09-80587-CIV, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009) ("The Court may look to affidavits, depositions, and oral testimony to resolve disputed questions of fact" to resolve disputed questions of fact regarding whether or not service was proper.).  "An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory." Bell, 2007 WL 274364, at *2 n.3 (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).  Where there is a conflict between the evidence, "the court must construe all reasonable inferences in favor of the plaintiff." Meier, 288 F.3d at 1269.

B.   Analysis

Defendants, relying on the affidavits they filed with their Motion, assert that Ulmer was not "personally" served with the Summons and Complaint because the papers were not served on Ulmer but were only left on the front porch of his residence.  (Mot. ¶ 2).  According to Defendants, Shepherd did not, on October 29, 2013, make any contact with Ulmer—or with anyone else allegedly at his residence.  (Id.).  Defendants rely on four (4) specific affidavits to support their Motion for insufficient service of process.  In the first, Ulmer states that he was at his place of business nearly every day and at his residence virtually every day.  He

9

testified that he was "at [his] home virtually every evening and will answer the doorbell if it rings at a reasonable hour."  (Ulmer Aff. [7 at 11-12] ¶¶ 5-6).  Ulmer further stated that he "was at his home on Tuesday, October 29, 2013, from the hours of approximately 3:00 a.m., when [he] returned home from work, until after 6:00 p.m."  (Id. ¶ 7).

In the second affidavit, Stasney stated that she also was at Ulmer's residence on Tuesday, October 29, 2013, from 11:00 a.m. until after 6:00 p.m., and when she left the Ulmer's residence with him, they discovered the Summons and Complaint on Ulmer's front porch.  (Stasney Aff. [7 at 14-15] ¶¶ 3-6).  She further testified that "the door bell was not rung during the time [she] was visiting, no one knocked on any door and no one called out or attempted to get anyone's attention or enter [Ulmer's] home."  (Id. ¶ 7).  She, and the third and fourth affiants, stated that they "had never known Ulmer to hide from anyone or to sneak away to avoid contact with anyone."  (Id. ¶ 9; Demm Aff. [7 at 17] ¶ 5; Carter Aff [7 at 20] ¶ 5).  In the third and fourth affidavits, Ulmer's employees also testified that Ulmer visits Diamond Dave's nearly every day and "is generally conspicuous and available to the public."  (Demm. Aff. [7 at 17] ¶¶ 4-5; Carter Aff. [7 at 20] ¶¶ 4-5).

Defendants thus contend that service[7] was improper under Rule 4 of the Federal Rules of Civil Procedure ("Rule 4"), because Ulmer was not personally served.[8]

Plaintiff challenges Defendants' claim of ineffective service of process by submitting the affidavit of Shepherd, Plaintiff's process server. Shepherd claims that service was perfected on Ulmer on October 29, 2013. She states that she saw Ulmer, that he avoided her by retreating into his house, she went to his front door and told Ulmer through the door that she wanted to serve him, and that he refused to accept service. Shepherd states that she also saw, through a window, a woman in the home with Ulmer.

---

[7]   The parties do not dispute that proper service of process on Ulmer constitutes proper service of process on Diamond.

[8]   Under Rule 4, service can be effective in one of two ways. See Fed. R. Civ. P. 4(h)(1). First, "[p]ursuant to Rule 4(h), 'service upon a domestic . . . [corporation, or . . .] unincorporated association . . . shall be effected . . . by *delivering* a copy of the summons and of the complaint to an officer [or] a managing or general agent . . . ." See Vax-D Med. Techs., LLC v. Texas Spine Med. Ctr., 485 F.3d 593, 596 (11th Cir. 2007) (quoting Fed. R. Civ. P. 4(h)) (emphasis added). "The term 'delivering' appears to refer to personal service. Although [the Eleventh Circuit has] not specifically addressed this issue in a published opinion, [it has cited] the Eighth Circuit [which] has held that Rule 4(h)(2) requires personal service." See Dyer v. Wal-Mart Stores, Inc., 318 F.App'x. 843, 844 (11th Cir. 2009) (citation omitted).
Rule 4(h) also allows for service to be made in the manner prescribed by Rule 4(e)(1) which provides that service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state . . . ." Fed. R. Civ. P. 4(e)(1). Georgia's law regarding personal service of process upon corporations mirrors those of the federal rules. See O.C.G.A. § 9-11-4(e)(7).

While Shepherd's account of the events of October 29, 2013, is more detailed and specific, the conflicting accounts of the events in the record must be resolved by the Court.  The events of October 29, 2013, are key to determining whether Ulmer evaded service.  To determine whose version is truthful, the Court needs to hear the testimonies under oath of Ulmer, Stasney, and Shepherd and evaluate their credibility.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that an evidentiary hearing will be conducted in Courtroom 1705, Richard B. Russell Building, 75 Spring St. SW, on August 15, 2014, at 9:30 a.m. to take the testimony of David Ulmer, Diane Stasney, and Elizabeth Shepherd on the efforts Shepherd made to serve Defendants and on the events at Ulmer's residence on October 29, 2013.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Preliminary Pretrial Deadlines and Discovery [8] is **GRANTED**.

**SO ORDERED** this 5th day of August, 2014.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE